Steven M. Chabre, SBN 173271
The Law Office of Steven M. Chabre
1335 Park Avenue
Alameda, CA 94501
(510) 749-1440
(510) 749-0466 (fax)
chabre66@yahoo.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUTHER WILLIAMS, | Case No.: |
| Plaintiff, | **COMPLAINT FOR ERISA WELFARE BENEFITS** |
| vs. | |
| CALIFORNIA PACIFIC MEDICAL CENTER EMPLOYEE WELFARE & FRINGE BENEFITS PLAN and METROPOLITAN LIFE INSURANCE COMPANY. | |
| Defendants. | |

Plaintiff, Luther Williams, alleges:

1.  JURISDICTION:  Plaintiff's claims are filed pursuant to 29 U.S.C. § 1001, et seq. ("ERISA").  Jurisdiction and venue are therefore proper pursuant to 29 U.S.C. § 1132.

2.  Plaintiff brings this action pursuant to 29 U.S.C. § 1132(a)(1)(B) to clarify his rights to past and future disability benefits under the terms of an ERISA welfare benefit plan.  Plaintiff seeks payment of ongoing disability benefits at the appropriate rate and all back benefits that are due to him, with interest.

3.  Plaintiff seeks attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

COMPLAINT                                                                        1

**THE PARTIES**

4.  Plaintiff is an adult resident of Sacramento County.

5.  Defendant California Pacific Medical Center Employee Welfare & Fringe Benefits Plan ("the Plan") is an employee welfare benefit plan that was established under ERISA by Sutter West Bay Hospitals ("Sutter"), a corporation incorporated in the state of California.

6.  Defendant Metropolitan Life Insurance Company ("MetLife") is a corporation incorporated in the state of New York.

7.  Plaintiff is and was at all times relevant a participant and beneficiary of the Plan.

**THE DISABILITY PLAN**

8.  The Plan promises to pay monthly disability benefits to participants who are disabled as defined by the Plan.

9.  The Plan administrator is Sutter.

10.  The Plan is insured by MetLife by means of a group insurance policy numbered 144536-1-G, which MetLife issued to Sutter.

11.  The Plan contains a provision that states:

Pre-existing Condition means You:

· received medical treatment, care, or services for a diagnosed condition; or

· took prescribed medication for a diagnosed condition;

in the 3 months immediately prior to the effective date of coverage under this certificate; and the Disability caused or substantially contributed to by the condition begins in the first 12 consecutive months after the effective date of coverage under this certificate.

You are not covered for disability caused or substantially contributed to by a Pre-existing Condition or medical or surgical treatment of a Pre-existing Condition.

12.  MetLife provided information to employees of Sutter, which states:

Q.  Are there any exclusions for pre-existing conditions?

A.  Yes.  For the first 12 months your plan may not cover a sickness or accidental injury that arose in the 3 months prior to your participation in the plan. Thereafter, provided you remain disabled, the sickness or accidental injury may be covered.  A complete description of the pre-existing condition exclusion is included in the Certificate of Insurance/Summary Plan Description provided by your Employer.

13.  The Plan provides two levels of benefits.  Under the first level an employee may purchase insurance that replaces 40% of his earnings in case he becomes disabled.  Under the second level for a higher premium an employee may purchase insurance that replaces 66.67% of his earnings in case he becomes disabled.

14.  LTD claims under the Plan are paid out of the assets of MetLife.

15.  MetLife decides whether or not a claim made under the Plan will be granted, and if it grants the claim, MetLife decides the level of benefits to be paid.

**PLAINTIFF'S DISABILITY**

16.  Plaintiff is a 53 year-old man.

17.  Sutter employed plaintiff as a patient registration representative.

18.  Plaintiff had to stop working on September 14, 2011 due to disability resulting from right shoulder tendinosis and degenerative joint disease, repetitive strain injuries of the upper extremities, myofascial pain syndrome, internal derangement of both knees, peripheral neuropathy, hepatitis C infection, and depression with posttraumatic stress disorder.

19.  Since September 14, 2011 plaintiff has been unable to perform his own occupation or any other occupation due to his several medical conditions.

20.  Plaintiff's treating physicians have opined that he lacks the capacity to perform the duties of any occupation.

21.  Social Security has granted plaintiff's claim for Social Security Disability Insurance benefits.

## CLAIM HISTORY

22.  Plaintiff's original effective date of coverage for insurance under the MetLife certificate and Plan was January 1, 2007.

23.  As of January 1, 2011 plaintiff elected the 66.67% level of insurance under the Plan.

24.  Plaintiff applied for disability benefits under the Plan in January 2012 alleging disability beginning September 15, 2011.

25.  MetLife denied the claim on May 30, 2012.

26.  Plaintiff appealed the denial on November 17, 2012.

27.  MetLife reversed the denial and granted the claim at the 40% of earnings level on March 12, 2013.  At that point MetLife was investigating whether it would pay the higher 66.67% benefit.

28.  By letter dated April 26, 2013 MetLife determined that plaintiff was only entitled to 40% of his earnings under the Plan as his disability under the "buy up" insurance (the additional 26.67%) was due to pre-existing conditions and thus excluded from coverage.

29.  In order to apply the preexisting condition exclusion to the 66.67% "buy up" MetLife defined plaintiff's "effective date of coverage under this certificate" as January 1, 2011 as opposed to the original date he became insured, January 1, 2007.

30.  Plaintiff appealed the denial of the 66.67% benefit on May 21, 2013 arguing that the "effective date of coverage under the certificate" was plainly when he first enrolled in the Plan, not when he increased his insurance coverage in January 2011.

31.  MetLife denied plaintiff's appeal by letter dated July 26, 2013.

32.  MetLife continues to pay plaintiff at the 40% level under the Plan.

33.  Plaintiff exhausted his administrative remedies under the Plan.

34.  MetLife has financial incentives to limit the cost of the Plan.

35.  MetLife allowed its conflict of interest to affect its decision to deny plaintiff's claim. In particular, its marketing materials, which are in accord with the plain language of the Plan,

indicate that that the pre-existing condition exclusion only applies to disabilities that occur within 12 months of "your participation in the plan."  In contravention of this assurance, it has applied the pre-existing condition exclusion to a disability that started well after 12 months of plaintiff's participation in the plan.

## FIRST CAUSE OF ACTION
### (Claim for Disability Benefits – All Defendants)

36.  Plaintiff realleges each of the paragraphs above as if fully set forth herein.

37.  Plaintiff has performed all of his obligations with respect to the Plan.

38.  All conditions precedent to plaintiff's bringing this ERISA claim and to his collecting disability benefits at the 66.67% level under this ERISA plan have been performed by plaintiff or have occurred.

39.  The pre-existing condition exclusion does not apply to plaintiff's claim as his effective date of coverage under the certificate was January 1, 2007, not January 1, 2011.

40.  Plaintiff has been disabled and eligible to receive benefits at the 66.67% level under the terms of the Plan at all times since March 13, 2012.

41.  29 U.S.C. § 1132 (a)(1)(B) states:

A civil action may be brought --

(1) by a participant or beneficiary --

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

42.  The defendants' actions constitute an unlawful denial of disability benefits under the Plan and under ERISA, as provided in 29 U.S.C. § 1132 (a)(1)(B).

## SECOND CAUSE OF ACTION
### (Attorney Fees and Costs – All Defendants)

43.  Plaintiff realleges each of the paragraphs above as if fully set forth herein.

COMPLAINT                                                                                      5

44.  Under the standards applicable to ERISA, plaintiff seeks to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to 29 U.S.C. § 1132(g).

**PRAYER FOR RELIEF**

45.  Plaintiff respectfully requests that this Court review the partial denial of his claim in this case and declare that he is entitled to ongoing disability benefits under the Plan at the 66.67% benefit level; entitled to payment of back disability benefits at the 66.67% level retroactive to March 13, 2012; and to interest on all back benefits.

46.  Plaintiff seeks payment of all attorney's fees and costs associated with attempting to secure the benefits owed to him pursuant to 29 U.S.C. § 1132(g).

47.  Finally, plaintiff seeks such other relief as this Court finds appropriate.

BY:   */Steven M. Chabre/*                           DATED: September 27, 2013
     STEVEN M. CHABRE
     Attorney for Plaintiff